## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LIBBY MINTZ | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO: |
| | § | |
| FIRST CONTINENTAL MORTGAGE, LTD. | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Libby Mintz ("Mintz" or "Plaintiff"), files this Original Complaint against Defendant First Continental Mortgage, Ltd. (hereinafter "Defendant"), and for her causes of action respectfully shows the Court as follows:

### I.
### PARTIES

1.      Plaintiff is a Texas resident.

2.      Defendant is an organization doing business in Texas. It may be served by serving a copy of this Complaint on its attorney, Carolyn Russell, at Ogletree Deakins One Allen Center, 500 Dallas Street, Suite 3000, Houston, TX 77002.

3.      Whenever in this Petition it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

**II.**
**JURISDICTION AND VENUE**

4.       Jurisdiction is appropriate and proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1331 because this matter is a civil action that arises under the laws of the United States. Jurisdiction is also proper pursuant to 29 U.S.C. § 2601 et seq because Mintz seeks to recover damages or to secure equitable relief under the Family and Medical Leave Act of 1993 (FMLA). Jurisdiction over Mintz's claim under § 451.001 of the Texas Labor Code is proper under 28 U.S.C. § 1367.

5.       Venue is appropriate and proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391 because Defendant does business in Houston, Harris County, Texas, and because the causes of action alleged herein occurred in Houston, Harris County, Texas.

**III.**
**SUMMARY OF CLAIMS**

6.       Because Defendant has engaged in unlawful employment practices in violation of 29 U.S.C. § 2601 et seq, Mintz seeks to recover damages or to secure equitable relief under the FMLA, which is an act of Congress requiring covered employers to provide employees with job-protected, unpaid leave for qualified medical and family reasons.

7.       Defendant has also engaged in unlawful employment practices in violation of Texas Labor Code Section 451.001 by terminating Mintz in retaliation for her filing making a Workers' Compensation claim.

8.       These practices include, but are not limited, to the matters listed in this Complaint.

9.        No action was taken to correct the prevalent problem.

10.    Plaintiff has suffered violations of 29 U.S.C. § 2601 et seq and Texas Labor Code Section 451.001 and seeks to recover damages or to secure equitable relief under the FMLA and/or Section 451.001 of the Texas Labor Code.

**V.**
**FACTUAL BACKGROUND**

11.    Mintz was hired to work by Defendant on or about February 22, 2021 as a Post - Closing Coordinator. Her rate of pay was $16.00[1] an hour. Her job duties included:

a) reading and responding to emails from the banks in which the banks were asking for titles and/or deeds of trust that the banks needed in their possession by the end of the month;

b) reading and responding to emails from title companies and reviewing titles and/or deeds of trust that had been sent by the title companies using the computer program Encompass to see: i) what the closing dates were for the titles and/or deeds of trust and ii) what the names of the investors (aka banks) were for the titles and/or deeds of trust that were received and reviewed;

c) filing the titles and/or deeds of trust;

d) un-stapling the titles and/or deeds of trust so that they could be scanned;

e) scanning titles and/or deeds of trust

f) re-stapling the original titles and/or deeds of trust after scanning the titles, deeds of trust, and occasionally powers of attorney ("documents") so that the documents can be shipped to the banks for their records;

g) After re-stapling the documents: i) entering into Encompass the date that the documents were received and ii) if the document was a deed of trust ("deed"),

---

[1] Mintz's hourly rate was eventually raised to $16.40 per hour.

entering the number of pages of the deed so that this information would be part of the homebuyers' files in Encompass;

h) saving the scanned documents into the Encompass system;

i) creating a manifest in Excel for the original documents that were to be shipped to the investors (aka banks). The information inputted into the manifest included: i) the name of the bank ii) the name of the home purchaser(s) iii) the documents (title, deed and/or power of attorney) and iv) the home purchaser's loan number;

j) printing out two copies of the manifest. One copy of the manifest would be shipped with the original documents (that were received from the title company) to the bank, and the other copy was for the Defendant's records;

k) packing the documents and manifest in either a box or envelope, then weighing the box or envelope, then creating two Fedex labels. The first Fedex label would go on the box/envelope, and the second label was stapled to Defendant's copy of the manifest;

l) putting the box or envelope in the lobby so that FedEx could pick the box/envelope up and take it to the bank;

m) taking Defendant's copy of the manifest, going back into Encompass and looking up the home purchaser's file, and entering the FedEx tracking number and the date the home purchasers' files were shipped. On occasion, the address of the bank that the home purchasers' files were being shipped to did not pop up, so Mintz entered that address into Encompass;

n) taking Defendant's copy of the manifest and filing it in a paper file;

      o) If the home purchasers' files were being shipped to Amerihome, emailing a copy of the manifest to Amerihome.

12.    Even though it was not part of her job duties, Mintz was regularly required to work at the receptionist's desk to relieve the receptionist when she was: i) on a break ii) at lunch or iii) not at work.

13.    When Mintz was hired, Defendant had a significant backlog of work. Specifically, there were approximately five months of titles and deeds of trust ("deeds") that had not been scanned or entered into the computer program Encompass. Because these documents could not be shipped to the banks until they were scanned and entered into Encompass, they were not received by the banks in a timely fashion. As a result, a number of the banks Defendants worked with began to assess late fees against Defendant due to the banks not receiving certain titles and deeds in a timely manner. **One of Mintz's primary duties when she was hired by Defendant was to clear this five-month backlog of titles and deeds.**

14.    Although Mintz's job title never changed while she was employed by Defendant, on or about June 2021, Mintz was reassigned to work in Post-Closing Collateral where she performed the following job duties:

      a) creating allonges. Creating allonges required going into a home purchases file in Encompass to find the template to create the allonges. Once the allonges are created, they would be taken to a supervisor to sign;

      b) creating paper folders by writing the home purchasers last names and loan numbers on the folders;

      c) when covering for the receptionist or when there were a lot of loan packages received from title companies, opening loan packages received from the title

companies and logging in the loan packages by handwriting the names of the title companies as well as the home purchaser(s), the date the loan packages were received, and the amount of the escrow checks in a binder for packages received;

d) sorting through loan packages and pulling out specific documents (escrow checks, allonges, promissory notes, and closing disclosure documents) to send to the investors (aka banks);

e) making copies of the specific documents pulled out of the loan packages and placing those copies into the loan packages;

f) placing the loan packages (with copies of escrow checks, allonges, promissory notes, and closing disclosure documents) into the paper folders with the home purchasers' last names and loan numbers on the folders that had previously been created;

g) placing escrow checks in a separate pile to go to Defendant's accounting department;

h) preparing handwritten manifests for the documents that were pulled out of the loan packages. These manifests included the home purchasers' names, the loan numbers, and the amount of the loans. A copy would be made of the manifests, resulting in an original manifest and one copy.

i) preparing a FedEx label and a copy. One FedEx label would be attached to the handwritten manifest, and the other label would be on the envelope;

j) Sending the original manifest to the bank along with the originals pulled from the loan packages, while the copy of the manifest would go into a separate folder;

15.     **In addition to her new job duties, Mintz was expected to continue all the duties (with the exception of covering for the receptionist) that she had performed prior to June 2021. Specifically, Mintz was still tasked with trying to clear the backlog of titles and deeds.**

16.     On or about December 2021, Mintz was ordered to discontinue working on Post-Closing Collateral work and to work exclusively carrying out her Post-Closing Coordinator job duties. Mintz was returned to these duties because Defendant was, once again, beginning to get a backlog of titles and deeds (the "backlog"). Prior to being ordered to carry out Post-Closing Collateral job duties, Mintz had reduced the backlog to two months. When Mintz was ordered to carry out only her Post-Closing Coordinator job duties in December of 2021, the backlog was back up to five months.

17.     On or about April 24, 2022**,** Mintz sustained an injury while on the job. Mintz was opening a cabinet above her head and while the handle was still in her hand, the cabinet door completely came off the hinges. Mintz had to struggle to keep the door from hitting her in the head. She eventually dropped the door on the ground. As a result, her right shoulder blade, back, right arm, right ring and middle fingers, and right elbow were injured. Mintz reported the injury to Dawn Jasso in Human Resource (HR) the same day (April 24, 2022). Because the injury occurred on the job, Mintz's injury was covered by Workers Compensation.

18.     On the day she was injured (April 24, 2022), Mintz went to Next Level Urgent Care. The examining doctor prescribed Naproxen for Mintz's pain and advised her to do stretching exercises.

19.     Between April 24, 2022 and on or about June 20, 2022, Mintz also attended six physical therapy sessions at Select Physical Therapy. The therapy sessions included the

following: right shoulder and right elbow being massaged, receiving ultrasound on her right elbow, stretching exercises, and applying heat packs on Mintz's right shoulder. These therapy sessions reduced Mintz's pain, but did not eliminate it.

20.     After June 20, 2022, First Continental's insurer (Hartford) closed Mintz's Workers Compensation file. This action was inappropriate because Mintz was still in pain due to her on-the-job injury.

21.     Mintz spoke with Defendant's HR department to let them know that she still needed physical therapy. HR told Mintz to contact Hartford directly. Mintz contacted Hartford on or about the third week of July, and Hartford finally reopened the file on or about August 2, 2022.

22.     On or about August 9, Mintz became sick with Covid. As a result of her illness, she was not able to come into work for Defendant from on or about August 10 through August 22, 2022. Despite her serious health condition, Mintz started working again from her home on or about August 12, 2022.

23.     Even though she was not 100% recovered from Covid, Mintz returned to Defendant's location to start working onsite on or about August 23, 2022. Upon her return, Mintz was told by Dawn Jasso that Mintz was scheduled to work up front in the reception area until 5 P.M. Ms. Jasso was informed by Mintz that she was not fully recovered and that she was only able to work a half-day onsite. Jasso replied by scheduling Mintz to work the next day in reception. Every day that Mintz came into work, Jasso continued to push for Mintz to work reception even though Mintz was still recovering from Covid.

24.     On or about August 23, 2022, Mintz's supervisor (Deshone Dabney) told Mintz "You were out longer than other people in this office who got Covid. Most of them returned to the office within one week."

25.     On or about August 30, 2022, Ms. Dabney's assistant supervisor (Carolyn Davis) told Mintz "It's unusual that you were out as long as you were. Shelley Wiggins and Shelly Aboloff both had Covid and were only out for a week." Davis also said "My 87-year-old cousin was sick with Covid for about a week."

26.     On or about August 31, 2022, Mintz was terminated from her job by Ms. Dabney. Dabney told Mintz "We're going to be eliminating your position, so we're going to have to let you go." Ms. Dabney also told Mintz that "We're going to have Matt (Skinner), Cindy (Nunez), and Joe (Payne) take over your job duties."

27.     Mintz was terminated even though she was very busy with work. On the day Mintz was terminated, she had just shipped out four boxes filled with titles and deeds ("documents"). This is the equivalent of approximately 140 documents being shipped out. Mintz completed this task in only four hours. Upon information and belief, there was also a three-month backlog of documents when Mintz was terminated. Upon information and belief, that means that there were approximately 1500 documents (titles, deeds of trust, and powers of attorney) that required attention. Had Mintz not been terminated and been allowed to work exclusively to clear this backlog, she would have had approximately 2.5 months of work **just clearing the backlog.**

28.     It should be noted that Mintz's job duties would have required her to do more than just clearing the backlog. Her additional duties would have included: i) handling new titles

and deeds, including looking them up in Encompass and filing them and ii) working in reception for 2-6 hours a week.

29.     Given the abundant amount of work that Mintz had at the time she was terminated, it is not credible that such a busy employee who was being paid only $16.40 per hour was truly let go for "business reasons." Moreover, the idea that Mintz's job could be eliminated and that Matt Skinner, Cindy Nunez, and Joe Payne (who also had an abundant amount of work at the time of Mintz's termination) could take over Mintz's job duties is not believable.

30.     The following undisputed facts demonstrate that Defendant fired Mintz for unlawful reasons: a) she was terminated only three weeks after she insisted on her workers compensation claim being reopened b) Defendant made negative comments about Mintz's Covid illness and the time she took off to recover from that illness and c) Defendant fired Mintz one week after returning from FMLA leave.

31.     These facts demonstrate that Mintz was fired in retaliation for her filing a Workers Compensation Claim and in retaliation for her taking leave under the FMLA.

## VI.
## CAUSES OF ACTION

### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA)

32.     Mintz hereby incorporates all the facts contained in §V of this Plaintiff's Complaint as if set forth fully herein.

33.     Mintz took time off from work from time to time because she was unable to work due to a serious health condition.

10

34.     Defendants (through its agents) was very upset with Mintz for having the audacity to take FMLA. For example, Mintz's supervisors (Dabney and Davis) made negative comments like:

  a)    "You were out longer than other people in this office who got Covid. Most of them returned to the office within one week."

  b)    "It's unusual that you were out as long as you were. Shelley Wiggins and Shelly Aboloff both had Covid and were only out for a week."

  c)    "My 87-year-old cousin was sick with Covid for about a week."

35.     Defendants harassed and ultimately fired Mintz in retaliation for her taking FMLA Leave.

36.     Defendant's retaliation against Mintz was in violation of 29 U.S.C. §2601, *et. seq.* and specifically, but not limited to, 29 U.S.C. §§2612(a)(1)(D) and 2615(a)(1) and (2).

37.     Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Mintz.

38.     As a result of Defendant's actions in violation of the FMLA, Mintz has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, and loss of enjoyment of life in the past, and which will, in all probability, continue in the future.

**STATUTORY DAMAGES UNDER FMLA**

39.     Mintz has been forced to incur reasonable attorney's fees and court costs and seeks to recover for these costs pursuant to 29 U.S.C. §2617(a)(3).

11

40.     Mintz is entitled to damages equal to the amount of her wages, salary, employment benefits, and any other compensation denied or lost by reason of this FMLA violation pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(I).

41.     Pursuant to 29 U.S.C. §2617(a)(1)(A)(ii), Mintz is entitled to the interest on the amount calculated in 29 U.S.C. §2617(a)(1)(A)(i)(I), calculated at the prevailing rate.

42.     Pursuant to 29 U.S.C. §2617(a)(1)(A)(iii), Mintz is entitled to an additional amount as liquidated damages equal to the sum of the amount described in 29 U.S.C. §2617(a)(1)(A)(i)(I) and the interest described in 29 U.S.C. §2617(a)(1)(A)(ii).

43.     Pursuant to 29 U.S.C. §2617(a)(1)(B), Mintz is entitled to such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

## WRONGFUL TERMINATION UNDER § 451.001 ET SEQ. OF THE TEXAS LABOR CODE

44.     Mintz hereby incorporates all the facts contained in §V of this Plaintiff's Complaint as if set forth fully herein.

45.     Defendant and its employees, agents and representatives acted knowingly, willfully, and maliciously when they retaliated against and terminated Mintz in contravention of §451.001 *et seq.* of the Texas Labor Code.

46.     Defendant has sought to deny Plaintiff's fundamental rights and has maliciously taken retaliatory actions against Plaintiff for the sole purpose of punishing her and making her an example to other employees who might similarly seek to assert their rights under said statute.

47.     Mintz did nothing nor failed to do anything that in any way caused or contributed to her retaliatory firing.

48.    Mintz was not fired for "good cause" or "no cause", but for the improper cause of removing employees who have filed on the job injury claims from the books and records of Defendant and from discouraging other employees from filing on the job injury claims.

49.    Defendant's motive to fire Plaintiff, which was malicious and willful, was so the Defendant could lower or maintain a lower loss rate on its plan, to the detriment of its employees and this Plaintiff.

50.    As a result of the actions of Defendant, Plaintiff has suffered actual damages.  In addition, Plaintiff is entitled to recover exemplary damages from Defendant because such actions were done maliciously and willfully.

**DAMAGES RECOVERABLE UNDER § 451.001 ET SEQ. OF THE TEXAS LABOR CODE**

51.    Elements of the damages which Plaintiff seeks to recover from Defendant include compensation for the following:

A) Loss of earnings sustained by Plaintiff from date of termination to date of trial;

B) Loss of earning and earning capacity reasonably anticipated to be suffered by Plaintiff in the future;

C) Mental anguish, embarrassment, inconvenience, pain and suffering sustained by Plaintiff from the date of termination to the end of trial;

D) Mental anguish, embarrassment, inconvenience, pain and suffering which is reasonably anticipated to be suffered by Plaintiff in the future;

E) Actual damages suffered by Plaintiff;

F) Punitive and exemplary damages; and

G) Pre-judgment and post-judgment interest at the legal rate; and

H) All costs of Court.

## VII.
## JURY DEMAND

52.     Mintz requests a trial by jury on all issues triable by a jury.

## VIII.
## PRAYER

53      **WHEREFORE, PREMISES CONSIDERED,** Mintz prays that Defendant be

cited to appear herein, and that after trial by jury, a judgment be entered granting Mintz the

following:

A.  reinstatement by Defendant placing Mintz in the position she would have occupied
    but for Defendant's discriminatory treatment and making her whole for all earnings
    she would have received had it not been for Defendant's discriminatory and tortious
    treatment including, but not limited to, wages, bonuses, pension and other lost
    benefits;

B.  compensatory damages;

C.  punitive damages;

D.  pre-judgment and post-judgment interest at the maximum rate permitted by law;

E.  reasonable and necessary attorney's fees in an amount to be shown to the satisfaction
    of the court;

F.  cost of court; and

G.  such other and further relief, both general and special, at law and in equity, to which
    Mintz may show herself justly entitled under all attending facts and circumstances.

Respectfully submitted,

 _/s/ Andrew L Mintz_
Andrew L. Mintz
Texas Bar No. 24037120
SD TX I.D. No. 35220
andrew@almintzlawfirm.com

14

ANDREW L. MINTZ, PLLC
2100 West Loop South, Suite 1125
Houston, Texas 77027
Ph: (713) 859-3828
Fax: (832) 626-0389

**ATTORNEY FOR PLAINTIFF**
**LIBBY MINTZ**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon Defendant's attorney, Carolyn Russell, at Ogletree Deakins, One Allen Center, 500 Dallas Street, Suite 3000, Houston, TX 77002 by e-mail on the 22nd day of November, 2022.

Carolyn Russell
Ogletree Deakins
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX 77002

/s/ *Andrew L. Mintz*
Andrew L. Mintz

15